```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION

LYNDA BARRETT-O'NEILL,

              Plaintiff,

      vs.                               Civil Action 2:14-cv-194
                                        Magistrate Judge King

LALO, LLC, et al.,

              Defendants.
```

## OPINION AND ORDER

Plaintiff Lynda Barrett-O'Neill asserts a claim under the Ohio Consumer Sales Practices Act, O.R.C. § 1345.01 *et seq.*, and claims for breach of contract and fraudulent misrepresentation in connection with the sale of her antiques and other personal belongings by defendant Lalo, LLC d/b/a Caring Transitions of North Central Ohio ("Caring Transitions"). Plaintiff also seeks recovery from Caring Transitions' franchisor, C.T. Franchising Systems, Inc. d/b/a Caring Transitions ("CTFSI"), under theories of agency and vicarious liability.

This matter is before the Court, with the consent of the parties pursuant to 28 U.S.C. § 636(c), for consideration of *Defendant CT Franchising Systems, Inc.'s Motion for Judgment on the Pleadings* ("*CTFSI's Motion*"), Doc. No. 14. Plaintiff opposes *CTFSI's Motion*, *Plaintiff Lynda Barrett-O'Neil's Memorandum Contra Defendant's Motion for Judgment on the Pleadings* ("*Plaintiff's Response*"), Doc. No. 16, and CTFSI has filed a reply. Doc. No. 17. For the reasons that follow, *CTFSI's Motion* is **GRANTED**.

I.  **Background**

The *Complaint*, Doc. No. 1, alleges that plaintiff entered into a contract with Caring Transitions in January 2013, whereby Caring Transitions agreed "to attempt to sell" plaintiff's household goods on commission. *Id*. at ¶¶ 30, 34. Caring Transitions picked up most of plaintiff's household goods from her home in Marin, Ohio, in February and March 2013. *Id*. at ¶¶ 43, 48. Months later, it is alleged, plaintiff "had still received no explanation regarding the status of her Household Goods, nor did she receive her proceeds from the sale of the items." *Id*. at ¶¶ 51-70. Plaintiff then "called Defendant CTFSI to express her concerns and discuss her complaints regarding Caring Transitions." *Id*. at ¶ 71. "In her initial call to CTFSI on or around June 26, 2013, Ms. Barrett-O'Neill requested to speak with someone from the corporate office directly." *Id*. at ¶ 72. "CTFSI did not contact Ms. Barrett-O'Neill directly in response to her June 26, 2013 call." *Id*. at ¶ 73. "Instead, a CTFSI representative, Joel Roadruck, contacted Milt and Julie Law of Caring Transitions to alarm [sic] them of Ms. Barrett-O'Neill's complaint and requested the Laws inform him of their 'side before [he had] to talk with her.'" *Id*. at ¶ 74.

Caring Transactions sent plaintiff a "Client Statement to Date" on June 27, 2013. *Id*. at ¶ 75. According to the statement, Caring Transactions had sold $3,672 of plaintiff's household goods and had incurred $3,310 in expenses. *Id*. at ¶¶ 76-79. Enclosed with the statement was a check for $276.80, "which was [plaintiff's] purported

2

account balance after giving her a 'CT Goodwill Credit' of $1,000." *Id*. at ¶ 80.

On July 12, 2013, Caring Transitions emailed plaintiff a "plan" to sell plaintiff's remaining household goods. *Id*. at ¶ 82. On July 13, 2013, plaintiff "informed Caring Transitions that she preferred nothing more be done regarding the sale . . . and that she would make arrangements to pick up her remaining items." *Id*. at ¶ 83. On July 20, 2013, Caring Transitions informed plaintiff that only four items remained for her to pick up and that all of her other items "were sold, donated or otherwise liquidated per the terms of [their] contract." *Id*. at ¶¶ 84-85 (quotations omitted; alteration in original). When plaintiff returned to Caring Transitions' showroom in August 2013, "she discovered that there were actually dozens of her Household Goods left within Caring Transitions' possession, including many items up for sale around their warehouse/showroom with price tags." *Id*. at ¶ 87. Plaintiff also viewed her household goods for sale on numerous websites as late as January 2014. *Id*. at ¶¶ 90-95.

The *Complaint* alleges that

> [CTFSI] is a national franchise company founded in 2006 and is based out of Cincinnati, Ohio. CTFSI fields more than 140 franchise offices nationwide. According to its website, "Caring Transitions is the leader and total solution for Senior Moving, Downsizing and Estate Sales, including full and partial liquidations. You'll have the comfort of knowing that our associates are compassionate, experienced professionals who are bonded and fully insured." Further, its "promise" is "[t]o help people in a compassionate and caring manner during life's many transitions. Caring Transitions' goal is to provide a total and easy solution for our clients in their time of need."

3

*Id.* at ¶ 14.  "CTFSI is part of the International Franchise Association, the Small Business Association's Franchise Registry, VetFran and Minority Fran."  *Id.* at ¶ 15.  "Defendant CTFSI also holds a national meeting 'during more than two days of informational sessions, networking opportunities, and roundtable meetings,' wherein it presents its franchises with various awards."  *Id.* at ¶ 16.  "In additional [sic] to national meetings, Defendant CTFSI provides its franchises with five full days of initial training at its Corporate Office and pre-approved advertising and public relations materials, including professionally-designed advertising artwork, press releases, enewsletters, and a wide range of promotional and collateral materials."  *Id.* at ¶ 17.

The *Complaint* further alleges that "Defendant Caring Transitions was the agent for Defendant CTFSI at all times relevant to this Complaint."  *Id.* at ¶ 18.  "At all times relevant to this Complaint, Defendant CTFSI was aware, or should have been aware, of its agent's actions."  *Id.* at ¶ 19.  *See also id.* at ¶¶ 3, 128.  "Defendant CTFSI is liable for all actions undertaken by its franchisee, Defendant Caring Transitions, at all times relevant to this Complaint via at least agency law and through vicarious liability."  *Id.* at ¶¶ 20, 156, 172.  *See also id.* at ¶¶ 3, 129.

## II.  Standard

Defendant CTFSI moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings is to be evaluated by reference to the same standard as is a motion to

dismiss under Rule 12(b)(6). *Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). In determining whether dismissal on this basis is appropriate, the complaint must be construed in the light most favorable to the plaintiff, and all well-pleaded facts must be accepted as true. *See Bower v. Fed. Express Corp.,* 96 F.3d 200, 203 (6th Cir. 1996); *Misch v. Cmty. Mut. Ins. Co.,* 896 F. Supp. 734, 738 (S.D. Ohio 1994). The United States Supreme Court has explained that, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007). However, a plaintiff's claim for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*. Accordingly, a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

**III. Discussion**

CTSFI argues that it is entitled to judgment on the pleadings because the *Complaint* fails to plead facts sufficient to demonstrate the existence of a principal-agent relationship between CTSFI and Caring Transitions. The Court agrees.

> In determining whether an agency relationship exists under Ohio law,[1] the Court first notes that the existence of a franchisor-franchisee relationship between persons does not

---

[1] The parties agree that Ohio agency law applies.

5

> in itself preclude the existence of a principal-agent relationship between them. *See Arnson v. General Motors Corp.,* 377 F.Supp. 209, 212-14 (N.D.Ohio 1974) (finding no agency, but basing analysis on lack of a right of control as demonstrated by uncontradicted facts). The Court must scrutinize the relationship between persons who are franchisor-franchisee just as it would scrutinize any relationship in determining whether an agency relationship exists. The central factor under Ohio law in determining whether an agency relationship exists is the right of control vested in the principal. *See Priess v. Fisherfolk,* 535 F.Supp. 1271, 1279 (S.D.Ohio 1982) ("The most important element in determining whether an agency exists in the presence of some control over the conduct of the agent."); *Arnson,* 377 F.Supp. at 213; *Griffith v. Rutledge,* 110 Ohio App. 301, 304, 169 N.E.2d 464 (1960) ("[T]he existence of the relationship of principal and agent depends, not upon any exercise of control at the moment, but upon the right of control."); *see also* Note, *Theories of Liability for Retail Franchisors: A Theme and Four Variations,* 39 Md.L.Rev. 264, 267 (1979) ("Because a franchise is something of a hybrid business form, resembling both an association of independent businessmen and a company-owned chain, the primary problem in ascertaining franchise liability has been fitting the franchiser-franchisee relationship into one of the two traditional categories of agency law, principal-independent contractor or master-servant.... The central question in the courts' analysis has been the extent of control exercised by the franchisor over the franchise operations....").

*Taylor v. Checkrite, Ltd.*, 627 F. Supp. 415, 416-17 (S.D. Ohio 1986) (footnote omitted). *See also Bricker v. R & A Pizza, Inc.*, 804 F. Supp. 2d 615, 623 (S.D. Ohio 2011).

"'While the existence and extent of the agency relationship is a question of fact, the plaintiff must sufficiently allege that an agency relationship existed in order to survive a Rule 12(b)(6) motion to dismiss.'" *The Wooster Brush Co. v. Bercom Int'l, LLC*, 5:06-CV-474, 2008 WL 1744782, at *3 (N.D. Ohio Apr. 11, 2008) (quoting *Bird v. Delacruz*, 2:04-CV-661, 2005 WL 1625303 (S.D. Ohio July 6, 2005)). However, "[i]t is insufficient to merely plead the legal conclusions

of agency." *Bird*, 2005 WL 1625303 at *4 (collecting cases) (internal quotations omitted). "[A] complaint relying on agency must plead facts which, if proved, could establish the existence of an agency relationship." *Id.* (collecting cases) (internal quotations omitted). *See also In re Commercial Money Ctr., Inc.*, 1:02-CV-16000, 2005 WL 2233233, at *18 (N.D. Ohio Aug. 19, 2005) ("In addition, several district courts have held that '[m]ere legal conclusions are insufficient to state a claim based on agency. Instead, a claimant must plead facts that would support a finding that the alleged agents had actual or apparent authority to act on behalf of another . . . .'") *aff'd sub nom. Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327 (6th Cir. 2007).

In the case presently before the Court, plaintiff argues that "the law does not require [her] to actually plead CTFSI controlled Caring Transitions. It is enough that she pled Caring Transitions was CTFSI's agent, which incorporates the right to control." *Plaintiff's Response*, p. 6. The Court disagrees. The *Complaint* alleges that "Caring Transitions was the agent for Defendant CTFSI at all times relevant to th[e] Complaint," *Complaint*, ¶ 18, and that CTFSI "is liable for all actions undertaken by . . . Caring Transitions . . . via at least agency law and through vicarious liability." *Id.* at ¶¶ 20, 156, 172. *See also id.* at ¶¶ 3, 129. These allegations are legal conclusions and are insufficient under Rule 12(b)(6) to establish an agency relationship. *See Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) ("[A]lthough we must accept all well-

7

pleaded factual allegations in the complaint as true, we need not 'accept as true a legal conclusion couched as a factual allegation.'") (quoting *Twombly,* 550 U.S. at 555).

Plaintiff next argues that she sufficiently plead an agency relationship by alleging that "CTFSI provides training and collateral materials for its franchisees' use. [Plaintiff] also called CTFSI, and only after CTFSI contacted Caring Transitions did [Caring Transitions] send [plaintiff] a statement." *Plaintiff's Response*, p. 6. According to plaintiff, these factual allegations demonstrate CTFSI's right to control Caring Transitions. Again, the Court disagrees.

As noted *supra*, "[u]nder Ohio law, '[t]he determinative factor in deciding whether an agency relationship exists between a franchisor and a franchisee is the degree of control the franchisor has over the operations of the franchisee's business.'" *Bricker*, 804 F. Supp. 2d at 623 (quoting *Coleman v. Chen*, 712 F. Supp. 117, 124 (S.D. Ohio 1988)). The *Complaint* alleges that CTFSI "holds a national meeting 'during more than two days of informational sessions, networking opportunities, and roundtable meetings,' wherein it presents its franchises with various awards." *Complaint,* ¶ 16. "In additional to national meetings, Defendant CTFSI provides its franchises with five full days of initial training at its Corporate Office and pre-approved advertising and public relations materials, including professionally-designed advertising artwork, press releases, enewsletters, and a wide range of promotional and collateral materials." *Id*. at ¶ 17. The

*Complaint* also alleges that plaintiff called CTFSI to "discuss her [previous] complaints regarding Caring Transactions" and that Caring Transactions responded to plaintiff's complaints only after being contacted by CTFSI. *Id.* at ¶¶ 71-75. Notably, the *Complaint* does not allege that CTFSI controlled or had the right to control any portion of Caring Transitions' operations. Holding a meeting with "informational sessions, networking opportunities, [] roundtable meetings," presenting awards, and providing marketing materials does not suggest that CTFSI had the right to control the means or method by which Caring Transitions conducted its business. *See Broock v. Nutri/Sys., Inc.*, 654 F. Supp. 7, 10 (S.D. Ohio 1986) ("The right to require that all products be purchased from the franchisor, *however, in itself* does not indicate that a right of control over the franchisee vested in the franchisor.") (emphasis in original); *Viches v. MLT, Inc.*, 127 F. Supp. 2d 828, 832 (E.D. Mich. 2000) ("All that the franchise agreement in this case does is give Defendants control over the quality of services its franchisee provides. A franchisor's insuring the 'uniformity and standardization of . . . services,' however, does not give rise to an agency relationship.") (citations omitted); *Puente v. Garcia*, No. L-86-134, 1986 WL 14372, at *2 (Ohio Ct. App. Dec. 12, 1986) ("If the franchisor has no power over the daily operations of the business, so as to vest the franchisor with control within the definition of agency, the franchisor cannot be held vicariously liable for the negligence of a franchisee."). Moreover, the *Complaint* does not allege that Caring Transitions' response to

9

plaintiff's complaints was any way mandated or controlled by CTFSI, and there is no suggestion that CTFSI held Caring Transitions out to the public as possessing authority to act on its behalf. *See Koczan v. Graham*, 98CA007248, 2000 WL 1420342, at *10 (Ohio Ct. App. Sept. 27, 2000) ("Agency may also exist where the principal intentionally or negligently held out the agent to the public as possessing authority to act on the principal's behalf.") (citing *Puente*, 1986 WL 14372).

Finally, plaintiff argues that she adequately plead the existence of an agency relationship by alleging that "CTFSI was aware, or should have been aware, of Caring Transitions' misconduct." *Plaintiff's Response*, pp. 7-9 (citing *Complaint*, ¶ 19). Plaintiff has not, however, offered any support for her argument that mere knowledge of another's actions can give rise to an agency relationship.

Plaintiff has failed to plead facts sufficient to demonstrate the existence of an agency relationship between CTFSI and Caring Transitions. Because plaintiff's claims against CTFSI are dependent on a theory of agency, *see Plaintiff's Response*, pp. 8-9; *Complaint*, ¶ 23 ("The CSPA applies to Defendant Caring Transitions, and as Caring Transitions' principal, CTFSI is vicariously liable for its franchisee's actions."), the Court concludes that plaintiff has failed to state a claim upon which relief can be granted against CTFSI.

Accordingly, *Defendant CT Franchising Systems, Inc.'s Motion for Judgment on the Pleadings*, Doc. No. 14, is **GRANTED.**

August 8, 2014                           *s/Norah McCann King*
                                         Norah McCann King
                                         United States Magistrate Judge