**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**LYNDA BARRETT-O'NEILL**

        **Plaintiff,**

                                    **Case No. 2:14-cv-00194**
       **v.**                              **Magistrate Judge King**

**LALO, LLC, *et al*.,**

        **Defendants.**

**OPINION AND ORDER**

This is a diversity action in which plaintiff Lynda Barrett-O'Neill ("plaintiff") alleges that defendant LALO, LLC, doing business as Caring Transitions of North Central Ohio ("Caring Transitions" or "defendant") violated the Ohio Consumer Sales Practices Act ("CSPA"), O.R.C. 1345.01 *et seq*., in connection with the disposition of plaintiff's personal property by the defendant. Plaintiff also asserts claims of breach of contract, fraudulent misrepresentation, negligence, conversion, breach of bailment, and trespass to chattels.[1] This matter is now before the Court, with the consent of the parties pursuant to 28 U.S.C. § 636(c), on the *Defendant LALO, LLC's Motion for Summary Judgment*, ECF No. 52 ("*Defendant's Motion*") and on the *Motion of Defendant* [sic] *Lynda Barrett-O'Neill for Summary Judgment*, ECF No. 53 ("*Plaintiff's Motion*"). Plaintiff opposes *Defendant's Motion* and defendant has filed a reply. *Plaintiff Lynda Barrett-*

---

[1] Claims originally asserted against defendant's franchisor under theories of agency and vicarious liability have been dismissed. *Opinion and Order*, ECF No. 19.

1

*O'Neill's Memorandum contra to Defendnat* [sic]  *LALO, LLC's Motion for Summary Judgment,* ECF No. 54 ("*Plaintiff's Response*"); *Defendant LALO, LLC's Reply in Support of Its Motion for Summary Judgment*, ECF No. 58. Similarly, defendant opposes *Plaintiff's Motion* and plaintiff has filed a reply. *Defendant LALO, LLC's Response to Plaintiff's Motion for Summary Judgment Response*, ECF No. 55; *Plaintiff Lynda Barrett-O'Neill's Reply to Defendant's Memo Contra to Plaintiff's Motion for Summary Judgment*, ECF No. 57. For the following reasons, *Defendant's Motion* is **GRANTED** in part and **DENIED** in part, and *Plaintiff's Motion* is **GRANTED** in part and **DENIED** in part.

## I.    Background

Milton and Julie Law were the owners of Caring Transitions, a franchised business that assisted individuals in downsizing or liquidating estates and personal property. *Deposition of Milton Law*, ECF No. 52-3, PAGEID# 505-06, 507, 511 ("*M. Law Deposition*"); *Deposition of Julie Law*, ECF No. 53-9, PAGEID# 994 ("*J. Law Deposition*"). From 2010 to 2014, Caring Transitions provided various downsizing services, including organization, moving, relocation, property distribution, property liquidation, auction, and resettlement services. *M. Law Deposition,* PAGEID# 508, 523; *J. Law Deposition*, PAGEID# 994-95. Caring Transitions would move a client's personal property to a warehouse, unpack the personal property, price the individual items, display the items for sale in the warehouse, and conduct sales of the items. *M. Law Deposition*, PAGEID# 519. Items not sold were donated to charity or otherwise disposed of by Caring Transitions. *Id.* at PAGEID# 520.

2

Both Julie and Milton Law had prior professional experience buying and selling antiques. *J. Law Deposition*, PAGEID# 988-89; *M. Law Deposition*, PAGEID# 541. However, although Julie Law had taken some relevant online and in-person classes, neither Milton nor Julie Law possessed a formal certificate or degree specializing in the appraisal of antique items. *J. Law Deposition*, PAGEID# 988-93; *M. Law Deposition*, PAGEID# 519.

Milton Law testified that, when items arrived at the warehouse, each item was ticketed with the client's code. *M. Law Deposition*, PAGEID# 518. It was he who priced each item, relying on his own knowledge and subjective opinion. *Id.* at PAGEID# 519. On occasion, he would solicit the opinion of acquaintances with experience with particular items or conduct an internet search. *Id.* at PAGEID# 553-54. The items were then displayed for sale. *Id.* at PAGEID# 519. Upon the sale of an item, he would note, without specifying either the item or the purchaser, the identity of the client and the price for which the item was sold. *Id.* at PAGEID# 520. The sales amounts were include in the client's settlement sheet, which also reflected third party costs. *Id.* at PAGEID# 521.

In January 2013, plaintiff met with Julie and Milton Law for the first time to discuss the downsizing and sale of her personal property. *M. Law Deposition*, PAGEID# 543; *Affidavit of Lynda Barrett-O'Neill*, ECF No. 53-3, PAGEID# 938. According to plaintiff, Julie Law represented that she was an expert in antiques and plaintiff relied in part on that representation when she decided to engage Caring Transitions' services. *June 3, 2015 Deposition of Lynda Barrett-*

*O'Neill*, ECF No. 52-5, PAGEID# 660 ("*Barrett-O'Neill Deposition 2*"); *Affidavit of Lynda Barrett-O'Neill*, PAGEID# 939.

On January 22, 2013, Barrett-O'Neill signed a Personal Property Liquidation Agreement ("*Agreement*") that addressed the services to be rendered by Caring Transitions. *Agreement*, ECF No. 53-4.[2] Although it is primarily a form document, the *Agreement* also reflects a number of handwritten modifications that are initialed by both Milton Law and plaintiff. *Id*. at PAGEID# 943-47; *M. Law Deposition*, PAGEID# 548-51.

Paragraph 2 of the *Agreement* vested Caring Transitions with sole authority over the valuation of the items:

> 2. **Services.** Caring Transitions shall attempt to sell all of the Household Goods (the "Sale") for prices to be determined by Caring Transitions. The Sale may be by public or private estate, household, or tag sale, public or private auction, consignment store, eBay or other Internet consignment, live Internet auction, or other method or combination of methods. If the Household Goods are sold by estate, household, or tag sale or auction at the premises, Caring Transitions shall promote, organize, and conduct the Sale. Unless otherwise expressly provided in this contract, Caring Transitions has complete discretion over all questions of valuation, pricing, price reductions, and discounts, methods and duration of the Sale, and merchantability of the Household Goods. . . .

*Agreement*, PAGEID# 944. Moreover, Paragraph 8 of the *Agreement* made clear that Caring Transitions offered no warranty or guarantee "of the value of any of the Household Goods, of the amount of Gross or Net Proceeds that will be realized from the sale of the Household Goods, or the price for which any individual item of the Household Goods will be sold." *Id.* at PAGEID 945.

---

[2] Although both parties purport to attach this document to their motions for summary judgment, the appendix to the *Agreement* attached to *Defendant's Motion* appears not to be complete. The Court will therefore refer to the exhibit as it is attached to *Plaintiff's Motion*.

Paragraph 5 of the *Agreement* listed possible additional services that could be provided upon the client's request, including "[c]lean[ing] and prepar[ing] the Household Goods for sale." *Id*. That service appears to have been rejected by plaintiff, who appears to have written "me" in connection with this service. *Id.*

Under the *Agreement,* "None of the Household Goods may be taken from the Premises without Caring Transitions' prior written consent." *Id.* However, a hand-written term granted plaintiff the right to "inspect and/or remove any unsold or un-merchantable household goods prior to donation of same to recognized charity. No commission shall be due or payable upon the subsequent sale of those goods" *Id.*

The *Agreement* also contemplated a 35% commission to be paid to Caring Transitions out of the total proceeds of the sale, with a minimum commission of $1,500. *Id.* The commission was to be paid out of the "Gross Proceeds" of the sale, which is further defined in the *Agreement* as

> the total gross purchase price . . . of all Household Goods sold after the date of this contract, <u>plus</u> the sale price, as determined by Caring Transitions, of all Household Goods claimed by, removed by, delivered to, or distributed to any person . . . without payment of the full sale price . . . or otherwise removed from the Sale by the authorization of Client.

*Id.*(emphasis in original).

The *Agreement* also required Caring Transitions to provide cleaning and disposal services. *Id.* Further, the *Agreement* provided that the client is "responsible for all expenses related to estate sale and/or hourly services," including costs of "marketing, advertising, employees, supplies, signage, . . . cleaning, and other

5

expenses paid to third-parties in connection with services rendered." *Id.* at PAGEID# 945. However, the services provided by Caring Transitions pursuant to the *Agreement* were provided "'as is' and without any warranty or representation as to the services, express, implied or statutory. . . ." *Id.* at PAGEID# 946.

Caring Transitions was responsible for remitting payment to plaintiff within 14 days of the completion of the sale of goods. *Id.* at PAGEID# 945.

The *Agreement* also contained a warranty disclaimer and a liability limitation clause that limited Caring Transitions' liability to the greater of the amount paid to Caring Transitions or $100, as well as an incorporation clause.

14. **Waiver of Certain Damages.** IN NO EVENT WILL CARING TRANSITIONS BE LIABLE TO YOU FOR ANY INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, INDIRECT, SPECIAL, OR PUNITIVE DAMAGES ARISING OUT OF THIS AGREEMENT OR ITS TERMINATION, REGARDLESS OF THE FORM OF ACTION AND REGARDLESS OF WHETHER CARING TRANSITIONS HAS BEEN ADVISED OF THE POSSIBILITY OF ANY SUCH LOSS OR DAMAGE.

15. **Limitation of Liability.** NOTWITHSTANDING ANY OTHER PROVISION OF THIS CONTRACT TO THE CONTRARY, IF CARING TRANSITIONS IS HELD LIABLE TO YOU FOR ANY LOSS, DAMAGE, INJURY OR DEATH, ITS LIABILITY WILL BE LIMITED TO THE AMOUNT THAT YOU HAVE PAID TO CARING TRANSITIONS FOR SERVICES OF $100, WHICHEVER IS GREATER. YOUR RECEIPT OF THAT AMOUNT WILL BE YOUR EXCLUSIVE REMEDY AGAINST CARING TRANSITIONS, REGARDLESS OF LEGAL THEORY USED TO DETERMINE THAT CARING TRANSITIONS WAS LIABLE. CARING TRANSITION WLL NOT BE LIABLE TO ANY THIRD PERSON BECAUSE OF THIS AGREEMENT.

16. **Miscellaneous Terms.** This contract constitutes the entire agreement between the parties relating to its subject matter. All prior agreements and understandings relating to the same subject are superseded and merged into this contract. Any changes, deletions, additions or deviations to or from the printed form of this contract, other than filling in blanks, will not be binding upon us unless initialed as approved by our

authorized agent. This contract may be modified only by
a written instrument signed by both parties. . . .

*Agreement*, PAGEID# 946 (as in original).

On February 14, 2013, plaintiff presented defendant with an
addendum, written by her and initialed by the parties, which purports
to modify certain provisions of the *Agreement*. *Id*. at PAGEID# 948-55.
For example, the addendum struck the following language from Paragraph
2 of the original *Agreement*, which granted defendant complete
discretion in the valuation of the items for sale:

> Paragraph 2 is amended by striking the sentence "Unless
> otherwise expressly provided in this contract, Caring
> Transitions has complete discretion over all questions of
> valuation, pricing, price reductions and discounts . . . .
> Household Goods."

*Id*. at PAGEID# 948. The addendum also purported to amend the waiver of
damages and limitation of liability provision in the *Agreement* "by
adding at the beginning of each paragraph 'Except as allowed under the
laws of the State of Ohio.'" *Id.*

Attached to the addendum is a 7-page appendix that lists items
and a dollar value assigned to each item, with a "Grand total
$31,520." *Id*. at PAGEID# 949-55 (emphasis in original). The addendum
also provides that "Caring Transitions acknowleges [sic] receipt of
Appendix I [the list of items with assigned values] and agrees that no
single item shall be reduced in sale price by more than 50%." *Id*. at
PAGEID# 738. Milton Law characterized the prices reflected in the
appendix as "inflated," *M. Law Deposition*, PAGEID# 559, and he
testified that he assigned his own prices to plaintiff's items. *Id.*

Caring Transitions hired and paid third party movers to transport
plaintiff's household goods to the Caring Transitions warehouse. *M.*

7

*Law Deposition*, PAGEID# 561-62; *see also Affidavit of Milton Law*, PAGEID# 748. According to Milton Law, the movers made a total of three trips to plaintiff's home to remove plaintiff's household goods. *Affidavit of Milton Law*, PAGEID# 760-63. Plaintiff was present for the first two moves but, after the second move, she relocated and listed her home for sale. *Affidavit of Lynda Barrett-O'Neill*, PAGEID# 939. She denies that she authorized a third trip, or that a third move even occurred. *Id.* at PAGEID# 939-40.

According to Milton Law, Caring Transitions also hired and paid a third party cleaning service to clean plaintiff's home. *M. Law Deposition*, PAGEID# 562-63; *see also Affidavit of Milton Law*, PAGEID# 748. In response, plaintiff offers the hearsay statement: "I was informed by my real estate agent my house was never cleaned." *Affidavit of Lynda Barrett-O'Neill*, PAGEID# 939.

Plaintiff testified that she created a complete inventory of approximately 3,000 items "entrust[ed]" to defendant. *Barrett-O'Neill Deposition 1,* at PAGEID# 620. *See also* Exhibit 53-4, PAGEID# 959-68.

Milton Law testified that he attempted to contact plaintiff on multiple occasions, by both telephone and email, regarding the sale of her goods. *M. Law Deposition*, PAGEID# 568. Milton Law also testified that, for a period of time when the company was prepared to donate certain items – otherwise unspecified - Caring Transitions was unable to reach plaintiff by telephone. *Id.* at PAGEID# 586.

According to plaintiff, she frequently checked with Caring Transitions between February and June 2013. *Affidavit of Lynda Barrett-O'Neill*, PAGEID# 940. She emailed Caring Transitions at least

8

once to inquire as to which items had been sold:

> This is the 3rd time this message has been sent to you. When you send the funds I am requesting, please include an itemized list of the items sold thus far in order that I may remove them from my inventory list. That way I can keep an up-to-date record of all items. Thank you. Lynda

*May 28, 2013 Email*, ECF No. 53-5, PAGEID# 969. Plaintiff avers that Caring Transitions made no response to that email. *Affidavit of Lynda Barrett-O'Neill*, PAGEID# 940.

On June 27, 2013, Caring Transitions sent plaintiff a "Client Statement to Date," which indicated that Caring Transitions had generated sales in the amount of $3672, on which a commission of $1285 was owed, and which itemized net expenses, including expenses associated with three moves ($800, $700, $550), cleaning expenses ($600), and "Sale Prep" ($660), for a total of $3110. *Client Statement to Date*, ECF No. 53-6, PAGEID# 970 ("*Client Statement*"). Crediting plaintiff with $1000.00 as a "goodwill gesture," *M. Law Deposition*, PAGEID# 565-66; *see Client Statement,* the *Client Statement* indicated that plaintiff was owed $276.80.

On July 13, 2013, plaintiff demanded, by email, that Caring Transitions stop the sale of the remaining household items; she represented that she would arrange to retrieve the remaining items from the warehouse. *July 13, 2013 Email*, ECF No. 54-7, PAGEID# 1329. In an email sent on July 20, 2013, Caring Transitions indicated that, with the exception of four items, the rest of plaintiff's household goods had been "sold, donated or otherwise liquidated per the terms of [the] contract." *July 20, 2013 Email*, ECF No. 54-8, PAGEID# 1330.

On August 17, 2013, plaintiff went to the Caring Transitions

9

warehouse to pick up those four items. *Affidavit of Lynda Barrett-O'Neill*, PAGEID# 940. Once there, however, she noticed "dozens" of her household goods still in the warehouse and available for public sale. *Id.* When she attempted to retrieve those items, Milton Law demanded that she pay for all but the four items listed in Caring Transitions' July 20, 2013 email. *Barrett-O'Neill Deposition 2*, PAGEID# 717-19; *Affidavit of Lynda Barrett-O'Neill*, PAGEID# 941. Plaintiff testified that she retrieved 33 items, both antiques and regular household items, from defendant's warehouse, but she could not specify which items were recovered. *Barrett-O'Neill Deposition 1*, PAGEID# 635. Plaintiff wrote a check for the items that she retrieved from the warehouse, payable to Caring Transitions, *Affidavit of Lynda Barrett-O'Neill*, PAGEID# 941; *Barrett-O'Neill Deposition 2*, PAGEID# 717, but she later stopped payment on the check. *Barrett-O'Neill Deposition 2*, PAGEID# 717. Plaintiff also avers that she thereafter saw "several" of her items still listed for sale on websites associated with Caring Transitions. *Affidavit of Lynda Barrett-O'Neill*, PAGEID# 940-41. Milton Law could not specify how many of plaintiff's items were donated. *M. Law Deposition*, PAGEID# 557.

## II.  Standard

Both parties move for summary judgment. The standard for summary judgment is well established. This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Pursuant to Rule 56(a), summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. In making this determination, the evidence "must be viewed in the light most favorable" to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252. In this regard, inadmissible hearsay evidence may not be considered on summary judgment. *Back v. Nestle USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012)(citing *Carter v. University of Toledo,* 349 F.3d 269, 274 (6th Cir. 2003)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine

11

issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Furthermore, trial court does not bear the burden of searching the entire record to discover genuine issues of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Instead, the nonmoving party has an "affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact."

## III. Discussion

Plaintiff alleges in Count One of the *Amended Complaint,* ECF No. 35, that defendant engaged in unfair, deceptive, or unconscionable acts or practices in violation of the CSPA when it (1) falsely represented that it leaves residences "broom clean" following sales (O.R.C. § 1345.02(B)(1); Ohio Administrative Code ("Ohio Admin. Code") § 109:4-3-05(D)(9)); (2) falsely represented that it was an expert in dealing with antiques and art (O.R.C. § 1345.02(B)(9)); (3) falsely represented that it was an expert in dealing with antiques and art when it knew that plaintiff was likely to rely on its representation to her detriment (O.R.C. § 1345.03(B)(6)); (4) knowingly took advantage of plaintiff's inability to protect her interests because of her age and emotional condition (O.R.C. § 1345.03(B)(1)); (5) knew that plaintiff was unable to receive a substantial benefit and knew

12

that the agreement was substantially one-sided (O.R.C. §§ 1345.03(B)(3), 1345.03(B)(5)); (6) engaged in unfair or deceptive acts or practices (O.R.C. § 1345.02); (7) engaged in unconscionable consumer sales acts or practices (O.R.C. § 1345.03); and (8) committed deceptive acts by charging unauthorized moving expenses, by failing to provide a written itemized list of specific services rendered, and by failing to provide plaintiff, upon her request, a written, itemized receipt for any household goods that were left with defendant (Ohio Admin. Code §§ 109:4-3-05(D)(6), 109:4-3-05 (D)(12), 109:4-3-05(D)(14)). *Amended Complaint*, PAGEID# 278-80.

Count Two of the *Amended Complaint* alleges that defendant acted in breach of contract by not attempting to sell all of plaintiffs' household goods, by reducing the price of the household goods by more than 50% of the specified price, by donating various household goods without first informing plaintiff, by charging plaintiff for moving and sales preparation expenses, and by failing to remit the net proceeds of sales in a timely fashion. *Id.* at PAGEID# 281-83.

In Count Three, plaintiff alleges that defendant fraudulently misrepresented defendant's expertise in antiques, misrepresented that it had disposed of all but four items of plaintiff's household goods when, in fact, defendant had retained many more items and was attempting to sell them, and misrepresented that the plaintiff's home was left "broom clean." *Id.* at PAGEID# 283-85.

In Count Four, plaintiff alleges that defendant negligently failed to properly label, inventory, store, market, advertise, and liquidate plaintiff's household goods. *Id.* at PAGEID# 285-86.

13

Count Five alleges that plaintiff held ownership rights to all the items not sold as of August 17, 2013 and that defendant converted the items that were not removed by her on that date. *Id.* at PAGEID# 286-87.

In Count Six, plaintiff alleges that the *Agreement* created a bailment relationship which defendant breached by retaining plaintiff's household goods after the bailment was terminated on August 17, 2013. *Id.* at PAGEID# 287.

Count Seven alleges that defendant committed a trespass to chattels when it refused to return plaintiff's household goods to her after her demand for their return on August 17, 2012. *Id.* at PAGEID# 287-88.

**A. Ohio Consumer Sales Practices Act**

**1. Consumer Transaction**

In Ohio, a "consumer transaction" is defined as

a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things.

O.R.C. § 1345.01(A). The CSPA is remedial in nature and is to be liberally construed in favor of consumers. *See Charvat v. Farmers Ins. Columbus, Inc.*, 178 Ohio App. 3d 118 (Ct. App. 10th 2008). In determining the existence of a consumer transaction, a court should examine the totality of the circumstances as evidenced by the objective manifestations of the parties at the time the parties entered into the agreement. *See*, *e.g.*, *Gugliotta v. Morano*, 161 Ohio App. 3d 152 (Ct. App. 9th 2005).

14

Citing *Flex Homes, Inc. v. Ritz-Craft Corp. of Michigan, Inc.,* 2009 WL 3242140 (N.D. Ohio Sept. 30, 2009), *aff'd*, 491 F. App'x 628 (6th Cir. 2012), and *Caley v. Glenmoor Country Club, Inc.,* 1 N.E.3d 471 (Ohio Ct. App. 5th 2013), defendant contends that the transaction at issue in this case was not a "consumer transaction" within the ambit of the CSPA because plaintiff's intention was to realize a profit on her investments, *i.e.,* her household goods and antiques. *Defendant's Motion*, PAGEID# 435-37. This Court concludes that the cases cited by defendant are inapposite and that the argument made by defendant in this regard is unpersuasive. In *Flex Homes,* the plaintiffs entered into a contract to purchase a model home with the intention of using the home for business purposes; the fact that they later used the home as a residence was immaterial. The court's characterization of the transaction as falling outside the reach of the CSPA was based on the parties' intent at the time they entered into the transaction and did not turn on the plaintiffs' profit motive. *Flex Homes*, 2009 WL 3242140, at *12. *Caley* involved a dispute over membership agreements at a country club, the dues for which had been paid with business funds and which had been intended as an investment and not for personal, family, or household purposes. *Caley*, 1 N.E.3d at 483. The facts in *Flex Homes* and *Caley* are simply inapplicable to those in this case.

In this case, it is undisputed that the items entrusted to defendant consisted of plaintiff's household goods, including some antiques. Plaintiff engaged Caring Transitions for the purposes of liquidated her household goods and downsizing to a smaller residence;

plaintiff also thereby hoped to supplement her income, and help to pay her mortgage while she awaited the sale of her residence. *See Affidavit of Lynda Barrett-O'Neill*, PAGEID# 938; *Barrett-O'Neill Deposition 1*, PAGEID# 612; *M. Law Deposition*, PAGEID# 543; *Affidavit of Milton Law*, PAGEID# 747-48. It is also undisputed that Caring Transitions provided plaintiff with moving services as well as services in connection with the sale of her personal belongings. *Affidavit of Milton Law*, PAGEID# 748; *see also Barrett-O'Neill Deposition 1*, PAGEID# 624-25.

Defendant argues that "[p]laintiff's intent to make money on this transaction, places this transaction outside the scope of the CSPA." *Defendant's Motion*, PAGEID# 437. However, the statutory test is not whether the consumer hopes to realize some profit in connection with the transaction but whether the purpose for entering into the transaction was personal, familial, or household. O.R.C. § 1345.01(A); *Gugliotta*, 161 Ohio App. 3d at 165. Here, plaintiff plainly manifested a personal and household purpose for entering in the transaction with defendant, regardless of any financial gain to be realized. Viewing these facts liberally in favor of plaintiff, as it must, the Court concludes that the relationship between plaintiff and Caring Transitions gave rise to a consumer transaction governed by the CSPA.

### 2. Parol Evidence Rule

Defendant also argues that the parol evidence rule forecloses CSPA claims relating to the allegation that plaintiff's house was not cleaned properly and to defendant's alleged representation that it was an expert in antiques. *Defendant's Motion*, PAGEID# 438. The parol

16

evidence rule is a rule of substantive law which provides that, "'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'" *Williams v. Spitzer Autoworld Canton, L.L.C.*, 122 Ohio St.3d 546, 550 (2009). The parol evidence rule applies to actions under the CSPA and, "absent proof of fraud, mistake, or other invalidating cause, a consumer may not present extrinsic evidence contradicting the parties' final written contract to prove a violation of that act." *Id.* at syllabus 2.

The *Agreement* contains the following language disclaiming any warranty:

> **Warranty Disclaimer.** Caring Transitions provides its services "as is" and without any warranty or representation as to the services, express, implied or statutory. Caring Transitions specifically disclaims, to the fullest extent allowed under applicable law, any implied warranties of title, merchantability, fitness for a particular purpose and non-infringement.

*Agreement*, PAGEID# 946. The *Agreement* also contains an integration clause that explicitly supersedes any prior agreement or understanding between the parties and limits the applicability of any subsequent modification of the *Agreement*:

> **Miscellaneous Terms**. This contract constitutes the entire agreement between the parties relating to its subject matter. All prior agreements and understandings relating to the same subject are superseded and merged into this contract. Any changes, deletions, additions or deviations to or from the printed form of this contract, other than filling in blanks, will not be binding upon us unless initialed as approved by our authorized agent. This contract may be modified only by a written instrument signed by both parties. . . .

*Id.*

17

Plaintiff's allegation that defendant was obligated to leave her home "broom clean" is based on conversations between the parties that are not reflected in the *Agreement*.[3] *See Barrett-O'Neill Deposition 1*, PAGEID# 615; *Agreement*. Similarly, the *Agreement* makes no mention of defendant's expertise in antiques, *see generally Agreement,* and plaintiff's claims in this regard are apparently based on conversations with Milton or Julie Law. *Affidavit of Milton Law*, PAGEID# 747 ("Any statement made about the antique experience of me, my wife, or Caring Transitions represented opinion.").

### 3. Enforceability of the addendum and attached appendix

Plaintiff also claims that defendant violated the CSPA when it failed to follow her instructions contained in the addendum which, as noted *supra*, listed certain items and set a price for each. Defendant contends that the addendum cannot give rise to any basis for liability because it was not supported by consideration. *Defendant's Motion*, PAGEID# 439. This Court agrees.

Under Ohio law, "essential elements of contract formation are an offer, acceptance, contractual capacity, consideration, manifestation of mutual assent, and legality of object and of consideration." *Bruzzese v. Chesapeake Exploration, LLC*, 996 F.Supp. 2d 663, 669 (S.D. Ohio 2014) (citing *Kostelnik v. Helper*, 96 Ohio St.3d 1, 3 (2002)). "The general rule is that a modification of a contract requires the same elements of mutual assent and consideration that are necessary

---

[3] In any event, in claiming that defendant failed to properly clean her residence, plaintiff relies only on inadmissible hearsay, which the Court may not consider on summary judgment. *See Back v. Nestlé USA, Inc.*, 694 F.3d at 575.

for the formation of contracts." *Porginski v. New Boston Dev. Co.*, No. 92CA2036, 1992 WL 388553, at *3 (Ct. App. 4th Dec. 22, 1992). Furthermore, a modification to a contract must be supported by consideration that is "new and distinct" from the consideration offered in connection with the original contract. *Thurston v. Ludwig*, 6 Ohio St. 1, 6 (1856); *see also Richland Builders, Inc. v. Thome*, 88 Ohio App. 520, 527 (Ct. App. 3rd 1950). "'[S]imply agreeing to do what one is already under an obligation to do does not constitute new or separate legal consideration.'" *Expeditors Intern. of Wash., Inc. v. Crowley Amer. Transp., Inc.*, 117 F.Supp. 2d 663, 669 (S.D. Ohio 2000).

The parties do not disagree that the *Agreement* formed a binding contract. *Defendant's Motion*, PAGEID# 450-51; *Plaintiff's Response*, PAGEID# 1142. However, the parties disagree whether the subsequent addendum is an enforceable modification of the *Agreement*. Defendant contends that the addendum, even though agreed to by the parties, *see M. Law Deposition*, PAGEID# 558, added terms beneficial to plaintiff without offering new consideration and that, consequently, the addendum is not enforceable. *Defendant's Motion*, PAGEID# 452.

Plaintiff testified on deposition that the addendum provided "[c]larification" of the *Agreement* to Caring Transitions*, Barrett-O'Neill Deposition 2*, PAGEID# 676, and she avers in her affidavit that "[t]he purpose of this addendum was to clarify the terms of the Agreement making more clear the duties and rights of each party." *Affidavit of Lynda Barrett-O'Neill*, PAGEID# 939. However, plaintiff argues in *Plaintiff's Response* that, by assigning prices to certain items, the appendix to the addendum saved defendant the time and

19

effort associated with having to research and assign prices to the items listed therein. *Plaintiff's Response*, PAGEID# 1142. This Court concludes that the addendum to the *Agreement* is not supported by consideration and is therefore not enforceable.

Under the terms of the *Agreement*, defendant retained complete discretion over the pricing of plaintiff's household goods. *Id*. at PAGEID# 944. The addendum and attached appendix – or list of items with assigned values - contained terms inconsistent with terms in the *Agreement*, including the elimination of defendant's discretion in pricing. There is no evidence that defendant sought or required "clarification" of the *Agreement*. Moreover, to construe the addendum as saving defendant time and effort is to distort the obvious intent and effect of the document. The new terms contained in the addendum were entirely beneficial to plaintiff and the Court rejects plaintiff's contention that, by purporting to withdraw rights and authority conferred by the *Agreement* on defendant, the addendum in actuality offered consideration to defendant.

In short, the Court concludes that the addendum to the *Agreement*, including the appendix attached to the addendum, is not supported by consideration and is therefore not contractually enforceable.

### 4. Unconscionable acts

Plaintiff claims that defendant acted unconscionably in violation of O.R.C. § 1345.03 by knowingly taking advantage of plaintiff's age and emotional state, *see* O.R.C. § 1345.03(B)(1), when it knew that plaintiff was unable to realize a substantial benefit from the transaction, *see* O.R.C. § 1345.03(B)(3), and by requiring plaintiff to

20

enter into a substantially one-sided transaction, *see* O.R.C. § 1345.03(B)(5).

Section 1345.03 prohibits unconscionable acts on the part of a supplier in connection with a consumer transaction:

> (A) No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.
>
> (B) In determining whether an act or practice is unconscionable, the following circumstances shall be taken into consideration:
>
> (1) Whether the supplier has knowingly taken advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of an agreement;
>
> ***
>
> (3) Whether the supplier knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction;
>
> ***
>
> (5) Whether the supplier required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier;
>
> ****

In considering whether an act or practice is unconscionable within the meaning of § 1345.03(B), a court's focus must be "on whether the consumer lacks the physical or mental ability to protect himself or herself." *Martin v. Gen. Motors Acceptance Corp.*, *N. Am.*, 160 Ohio App.3d 19, 25 (Ct. App. 7th 2005). "Failure to read the terms of a contract is not a valid defense to enforcement of the contract." *Id.*

21

There is no evidence that, at the time she entered into the *Agreement*, plaintiff suffered from any physical or mental infirmities that prevented her from protecting her own interests. Indeed, plaintiff conceded as much on deposition. *Barrett-O'Neill Deposition 2*, PAGEID# 680-81. Plaintiff's claim in this regard is based only on her age and the "emotional strain" of the process of downsizing. *Plaintiff's Response*, PAGEID# 1139. However, there is no evidence that either plaintiff's age or the emotional toll of this experience negatively affected her ability to comprehend the *Agreement* or to protect her own interests. Plaintiff was 65 years of age when she signed the *Agreement* in January 2013. *See Barrett-O'Neill Deposition 1*, PAGEID# 608. She is a college graduate who, for a number of years, owned retail garden centers. *Id.* The *Agreement* reflects modifications initiated by plaintiff, to which defendant agreed. Plaintiff testified that she experienced no "emotional hardships" prior to signing the *Agreement*. *Id.* at PAGEID# 612. She has not sought treatment for emotional distress. *Barrett-O'Neill Deposition 2*, PAGEID# 703-04. The circumstances surrounding the execution of the *Agreement* are evidence that plaintiff was at all relevant times able to protect her own interests.

There is, however, a genuine issue of material fact as to whether defendant knew that the plaintiff was unlikely to receive a substantial benefit from the *Agreement*. In evaluating the relationship between the parties, it is important to remember that the *Agreement* addressed not only the sale of plaintiff's household items but also the emptying and cleaning of plaintiff's residence. Nevertheless, in

22

discussing the value of plaintiff's household goods, Julie Law testified that "other than a few antique pieces . . ., everything else smelled like smoke. So we knew none of that was going to be high value." *J. Law Deposition*, PAGEID# 1037. On this record, the Court is simply unable to determine whether defendant knew that plaintiff was unlikely to receive a substantial benefit – or indeed, to determine what a substantial benefit would be. The Court therefore finds a genuine issue of material fact as to whether defendant knew that plaintiff was unlikely to receive a substantial benefit from the subject of the *Agreement*.

There is also a genuine issue of material fact regarding plaintiff's claim that the *Agreement* was substantially one-sided in favor of defendant. *Plaintiff's Response*, PAGEID# 1140. If defendant knew that plaintiff was unlikely to receive a substantial benefit from the *Agreement*, then it follows that there is a genuine issue of material fact as to whether the *Agreement* was substantially one-sided in favor of defendant. Under these circumstances, both *Plaintiff's Motion* and *Defendant's Motion* are denied with respect to these claims under the CSPA.

### 5. Deceptive acts

Plaintiff also claims that defendant committed deceptive acts in violation of the CSPA and the regulations promulgated thereunder, Ohio Admin. Code §§ 109:4-3-05(D). *Amended Complaint*, PAGEID# 279-80.

Section 109:4-3-05(D)(6) characterizes as a deceptive act or practice the charging of "any repair or service which has not been authorized by the consumer." Plaintiff alleges that the $550 expense

23

associated with a third move was not authorized by her, nor was the $660 associated with sorting, cleaning and preparing the items for sale. *Plaintiff's Response,* PAGEID# 1136.

As noted *supra*, the *Agreement* required that plaintiff pay expenses, including "expenses paid to third parties in connection with services rendered." *Agreement,* at PAGEID# 945. Milton Law testified that he explained to plaintiff that defendant would hire movers to take her household goods to defendant's warehouse and that plaintiff would be responsible for that cost. *M. Law Deposition*, PAGEID# 545-46. Plaintiff had agreed that defendant would move her goods to its warehouse but, she testified, she had thought that she would not be separately charged for that expense because moving services were simply "[p]art of [defendant's] cost of doing business." *Barrett-O'Neill Deposition 1*, PAGEID# 624-25. However, defendant hired third party movers to transport plaintiff's goods to its warehouse. *See M. Law Deposition*, PAGEID# 561-62. The *Agreement* expressly assigned responsibility for such third party expenses to plaintiff. *Id.* at PAGEID# 945. Accordingly, the moving expenses charged by defendant to defendant were therefore authorized. Moreover, there is evidence that Caring Transitions hired movers to transport plaintiff's goods in three moves, and plaintiff offers no evidence to the contrary. Defendant is entitled to summary judgment in connection with the third move.

Defendant also charged plaintiff $660 in connection with "Sale Prep." *Client Statement*, PAGEID# 970. However, in Paragraph 5 of the *Agreement*, the parties appear to have agreed that it was plaintiff who

would "clean and prepare the Household Goods for sale." *Id.* at PAGEID# 945. It is not entirely clear, on this record, what "Sale Prep" consisted of; to the extent that this charge related to the cleaning and preparing of plaintiff's items, that charge was not authorized by plaintiff. To that extent, plaintiff is entitled to summary judgment.

Plaintiff also contends that defendant committed a deceptive act when it asserted in its July 20, 2013, email to plaintiff that, with the exception of four items, the rest of plaintiff's household goods had been "sold, donated or otherwise liquidated per the terms of [the] contract." *July 20, 2013 Email*, PAGEID# 1330. Plaintiff specifically claims that this representation constituted a deceptive act in violation of Ohio Admin. Code 109:4-3-05(D)(9), which prohibits a supplier from representing that services have been performed when they have not. Defendant does not address this claim. Under these circumstances, the Court concludes that plaintiff is entitled to summary judgment on this claim.

Plaintiff also claims that defendant failed to provide certain itemizations required by the CSPA and the regulations promulgated thereunder. A supplier is required to provide its consumer an itemized list of services rendered, including the specific cost to the consumer, the amount charged for labor, and the identity of the individual performing the service. Ohio Admin. Code § 109:4-3-05(D)(12). Moreover, under certain circumstances and upon the consumer's request, a supplier must also provide "a written, itemized receipt for any item of goods that is left with, or turned over to, the supplier for repair or service." Ohio Admin. Code § 109:4-3-

05(D)(14). The latter itemization must include, *inter alia*, a "description . . . as will reasonably identify the goods to be  . . . serviced." § 109:4-3-05(D)(14)(c). Plaintiff claims that defendant's itemization of services rendered was deficient and that defendant wholly failed to provide an itemized receipt of goods left with it. *Amended Complaint*, PAGEID# 280.

The *Client Statement,* PAGEID# 970, specified the costs of moving plaintiff's goods, of cleaning, and of preparing the goods for sale, but did not identify the individual(s) who performed those services. On this record, plaintiff is entitled to summary judgment with respect to her claim under Ohio Admin. Code § 109:4-3-05(D)(12).

However, the Court concludes that plaintiff is not entitled to summary judgment with respect to her claim under Ohio Admin. Code § 109:4-3-05(D)(14), which requires, when requested by the consumer, an "itemized receipt for any item of goods that is left with, or turned over to, the supplier. . . ." Plaintiff testified that she herself created an inventory of items that were "entrust[ed]" to defendant. *Barrett-O'Neill Deposition 1*, PAGEID# 620. Although she later requested an itemized list of "items sold thus far," *May 28, 2013 Email*, PAGEID# 969, there is no evidence that plaintiff ever requested an "itemized receipt for any item of goods that [wa]s left with, or turned over to" defendant. *See* Ohio Admin. Code § 109:4-3-05(D)(14).

The CSPA also characterizes as a deceptive act, *inter alia*, a representation by the supplier that it "has a sponsorship, approval, or affiliation that the supplier does not have." O.R.C. § 1345.02(B)(9). Plaintiff claims that defendant violated the statute

when it represented that it was an expert in antiques. However, there is no evidence whatsoever that defendant, regardless of any claimed expertise in antiques, represented that it had a "sponsorship, approval, or affiliation" with any organization or agency. *Cf. Thomas v. National College of Virginia, Inc.*, 901 F.Supp.2d 1022 (S.D. Ohio 2012)(surgical accreditation and certification by Commission on Accreditation of Allied Health Professionals). Defendant is entitled to summary judgment on this claim.

In short, defendant is entitled to summary judgment on

(1)     plaintiff's claims that defendant acted unconscionably in violation of O.R.C. § 1345.03(B)(1) by taking advantage of plaintiff's age and emotional state,

(2)     that defendant committed a deceptive act in violation of Ohio Admin. Code § 109:4-3-05(D)(6) when it charged plaintiff for a third move,

(3)     that defendant committed a deceptive act in violation of Ohio Admin. Code § 109:4-3-05(D)(14) when it failed to provide an itemized receipt for goods left with it for service, and

(4)     that defendant committed a deceptive act in violation of O.R.C. § 1345.02(B)(9) by representing that it had a sponsorship, approval, or affiliation that it did not have.

Plaintiff is entitled to summary judgment on her claims that

(1)     defendant committed a deceptive act in violation of Ohio Admin. Code § 109:4-3-05(D)(6) when it charged plaintiff for "Sale Prep,"

(2)     that defendant committed a deceptive act in violation of Ohio Admin. Code § 109:4-3-05(D)(9) when it asserted on July 20, 2013, that all but four of plaintiff's items had been disposed of, and

(3)     that defendant committed a deceptive act in violation of Ohio Admin. Code § 109:4-3-05(D)(12) when it failed to provide plaintiff an itemized list of services that included the identity of the individual(s) who performed the moving and cleaning services.

27

As the parties' motions relate to plaintiff's claims under the CSPA that defendant acted unconscionably in violation of O.R.C. §§ 1345.03(B)(3), (5), the motions are without merit.

**B. Breach of Contract**

Plaintiff claims that defendant acted in breach of contract by failing to allow plaintiff an opportunity to inspect her goods before defendant donated those goods. Plaintiff also claims that, by issuing plaintiff a check for only $276.80, defendant acted in breach of the parties' contract. *Amended Complaint*, PAGEID# 282-83.[4] "Generally, a breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the nonbreaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffered damages as a result of the breach." *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App. 3d 95, 108 (Ct. App. 8th 1995).

Defendant moves for summary judgment on these claims, arguing that plaintiff's contract claims arise out of the addendum, which is unenforceable for lack of consideration. *Defendant's Motion*, PAGEID# 453. Plaintiff moves for summary judgment on these claims. *Plaintiff's Motion*, PAGEID# 783.

---

[4] Plaintiff specifically contends that, in the addendum, the parties agreed to a total retail value of $31,520.00 for plaintiff's goods. She values the items retrieved by her from defendant's warehouse in August 2013 at $11,650.00, but argues that the remaining items – worth $19,870.00 by her calculation – should have been sold for no less than 50% of that amount, or $9,935.00, but were in fact sold for only $3,672.00. *Plaintiff's Motion*, PAGEID# 783. Plaintiff claims that defendant acted in breach of the parties' agreement by either selling plaintiff's goods for less than 50% of the contractually agreed upon amount or donating her household goods before providing her an opportunity to inspect the goods, or both. *Id.*

28

For the reasons stated *supra*, the Court has concluded that the addendum is unenforceable for lack of consideration. Because plaintiff's claim that she should have realized substantially more than she was paid is based entirely on the addendum, defendant is entitled to summary judgment on that claim.

Plaintiff's claim in connection with the alleged denial of her right to remove any "unsold or un-merchantable" items prior to donation of those items to a charity arises under the *Agreement*. The Court will therefore consider the merits of that claim.

On July 20, 2013, after plaintiff had notified defendant that she intended to retrieve all of her remaining goods, defendant advised plaintiff that "[a]ll other items were sold, donated or otherwise liquidated per the terms of the contract." *July 20, 2013 Email*, PAGEID# 1330. Plaintiff insists that she was not given an opportunity to inspect or remove any remaining items prior to defendant's liquidation of those items. *Affidavit of Lynda Barrett-O'Neill*, PAGEID# 940. This statement is manifestly inaccurate. Plaintiff concedes that she removed 33 items from defendant's warehouse on August 17, 2013. *Barrett-O'Neill Deposition 1*, PAGEID# 635. Julie Law testified that none of plaintiff's items had been donated before plaintiff came to defendant's warehouse on August 17, 2013. *J. Law Deposition*, PAGEID# 1075. Plaintiff herself has testified that she does not "know that anything was donated." *Barrett-O'Neill Deposition 1*, PAGEID# 634. On this record, plaintiff has not offered even a scintilla of evidence in support of her claim that she was denied the opportunity to inspect or remove any item prior to defendant's

donation of her goods to charity.

In short, defendant is entitled to summary judgment on plaintiff's breach of contract claims.[5]

### C. Fraudulent Misrepresentation

In Count Three of the *Amended Complaint*, plaintiff alleges that defendant fraudulently misrepresented (1) its expertise in antique valuation and sales; (2) its liquidation of plaintiff's household goods when the goods, in reality, remained in defendant's possession; and (3) its intention to leave plaintiff's home "broom clean." *Amended Complaint*, PAGEID# 284-85. Plaintiff moves for summary judgment on only that portion of the claim that relates to defendant's alleged misrepresentation of its expertise in antiques. *Plaintiff's Motion*, PAGEID# 782. Defendant moves for summary judgment on the entire claim, based on plaintiff's alleged failure to return the money received from defendant. Defendant also argues that any representation made about its expertise in antiques is not actionable because it constituted an opinion, not a fact, and that any statement regarding leaving plaintiff's home "broom clean" is not actionable because it was a promise of future performance, not a statement of fact. *Defendant's Motion*, PAGEID# 426.

A claim of fraudulent misrepresentation arises when a party is induced to enter into an agreement through fraud or misrepresentation." *Stuckey v. Online Resources Corp.*, 819 F.Supp.2d

---

[5] Citing the waiver and limitation of liability provisions in the *Agreement,* defendant contends that any recovery to which plaintiff is entitled on her breach of contract claims is limited to the return of money paid by her or $100, whichever is greater. *Defendant's Motion*, PAGEID# 455. Because the Court concludes that defendant is entitled to summary judgment on plaintiff's breach of contract claims, the Court need not address this contention.

673, 682 (S.D. Ohio 2011).

> The elements of fraud under Ohio law are: (1) a
> representation or, when there is a duty to disclose, a
> concealment of a fact; (2) which is material to the
> transaction at hand; (3) made falsely, with knowledge of
> its falsity, or with such utter disregard as to whether it
> is true or false that knowledge may be inferred; (4) with
> the intent of misleading another into relying upon it; (5)
> justifiable reliance on the representation or concealment;
> and (6) an injury proximately caused by that reliance.

*Id.*

Defendant first argues that plaintiff's fraudulent

misrepresentation claim must fail because plaintiff has retained the

$276.80 paid to her by defendant. In making this argument, defendant

cites *Korono Jewelry & Music House v. Loveland*, 25 Ohio App. 116 (Ct.

App. 6th 1927), a case that involved alleged fraud in connection with

the sale of goods under former Ohio law. The appellate court found

error in the trial court's jury instruction that the purchaser of the

goods had a duty to promptly return the goods.

> This charge puts an undue burden on the [purchaser], who
> was not bound, upon discovery of the fraud, to return the
> goods to the company. By virtue of the language of section
> 8428, General Code, the purchaser would be held to have
> accepted the goods only if he did any act in relation to
> them inconsistent with the ownership of the seller, or
> when, after the lapse of a reasonable time, he retained the
> goods without intimating to the seller that he had rejected
> them.

*Id.* at 119. This Court is not persuaded by defendant's argument in

this regard. The elements of a claim of fraudulent misrepresentation

under current Ohio law do not include return of property. *See Stuckey*,

819 F.Supp.2d at 682. Moreover, even *Loveland* cannot be read as

requiring the prompt return of property at issue in a fraud claim.

Although the $276.80 paid to plaintiff by defendant may be a factor in

31

the calculation of damages, should it come to that, the Court concludes that defendant is not entitled to summary judgment on this claim merely because plaintiff may not have returned that amount to it.

Both parties move for summary judgment in connection with defendant's expertise in antiques. Defendant contends that any statement made regarding expertise in antiques was an opinion and, therefore, cannot form the basis of a claim for fraudulent misrepresentation even if untrue. *Defendant's Motion*, PAGEID# 449. "'A statement of opinion or belief such as occurs in 'puffing' generally cannot constitute a misrepresentation.'" *Miami Valley Paper, LLC v. Lebbing Eng'g & Consulting Gmbh*, No. 1:05-cv-00702, 2009 WL 818618, at *12 (S.D. Ohio Mar. 26, 2009) (citing *Kondrat v. Morris*, 118 Ohio App.3d 198, 208 (Ct. App. 8th 1997)).

This Court concludes that there exist genuine issues of material fact as to this claim. Milton Law testified that defendant never held itself out as an expert in antiques. *M. Law Deposition*, PAGEID# 542. Conversely, plaintiff testified that Milton and Julie Law held themselves, and defendant, out to be experts in antiques and that she relied on this representation when she retained defendant's services. *Affidavit of Lynda Barrett-O'Neill*, PAGEID# 939. It is clear that some representations were made. *See, e.g., Barrett-O'Neill Deposition 2*, PAGEID# 660; *Affidavit of Milton Law*, PAGEID# 747 ("Any statement made about the antique experience of me, my wife, or Caring Transitions represented opinion."). It is unclear, however, whether such representations amounted to statements of fact or, as defendant

32

contends, were mere "puffery." Under these circumstances, as it relates to this particular claim of fraudulent misrepresentation, neither party is entitled to summary judgment.

Defendant also seeks summary judgment in connection with plaintiff's allegation that defendant promised to leave plaintiff's home "broom clean." Defendant specifically contends that any such representation was, at most, a promise of future action and not a statement of fact and is therefore not actionable as a fraudulent misrepresentation. *Defendant's Motion*, PAGEID# 450. This Court agrees.

"As a general rule, fraud cannot be predicated upon statements which are promissory in their nature when made, and which relate to future actions or conduct, since a representation that something will be done in the future, or a promise to do it, from its nature, cannot be true or false at the time when it is made, and thus cannot generally be fairly viewed as a representation of fact." *Raftery v. S. Lee Corp.*, No. 2:07-cv-649, 2007 WL 4085289, at *3 (S.D. Ohio Nov. 15, 2007) (citing *Langford v. Sloan*, 162 Ohio App.3d 263, 268 (Ct. App. 2d 2005)). Here, any promise made by defendant to render plaintiff's home "broom clean" was a promise of future performance, rather than a statement of fact. It cannot, therefore, form the basis of an actionable fraudulent misrepresentation. As to this aspect of plaintiff's fraudulent misrepresentation claim, defendant is entitled to summary judgment.

In short, defendant is entitled to summary judgment on plaintiff's fraudulent misrepresentation claim in connection with the alleged representation that plaintiff's residence would be left "broom

33

clean." As for defendant's alleged misrepresentation of its expertise in antiques, neither party is entitled to summary judgment.

### D. Negligence

Plaintiff alleges that defendant owed her a duty to properly label, inventory, store, market, and advertise plaintiff's household goods and that defendant acted in breach of that duty when it mislabeled, marketed, lost, improperly liquidated, and sold plaintiff's goods for less than 50% of the values specified in the addendum. *Amended Complaint*, PAGEID# 285. Defendant moves for summary judgment on this claim, arguing that a negligence claim is foreclosed by the existence of a binding contract between the parties. *Defendant's Motion*, PAGEID# 445. Plaintiff moves for summary judgment on this claim as well, arguing that the duty owed to her arose – not from the contract between the parties – but under the CSPA. Plaintiff specifically argues that, under Ohio Admin. Code § 109:4-3-05(D)(14), defendant had a duty to provide plaintiff, upon her request, an itemized receipt of goods, and that defendant acted in breach of that duty by failing to keep an itemized list of the household goods or to provide plaintiff with an itemized receipt when she requested one. *Plaintiff's Motion*, PAGEID# 781.

In order to prevail on a claim of negligence in Ohio, a plaintiff must establish "'(1) the existence of a duty owing to the plaintiff; (2) a breach of that duty; and (3) proximate causation.'" *Gruenbaum v. Werner Enterprises, Inc.*, No. 09-CV-1041, 2011 WL 563912, at *3 (S.D. Ohio Feb. 2, 2011) (citing *Moncol v. Bd. of Ed.*, 55 Ohio St.2d 72, 75 (1978) (citations omitted)). "A duty may be established by common law,

legislative enactment, or by the particular facts and circumstances of the case." *Chambers v. St. Mary's School*, 82 Ohio St. 3d 563, 565 (1998) (citing *Eisenhuth v. Moneyhon*, 161 Ohio St. 367 (1954)). Where a valid contract exists between the parties, however, "[a] tort exists only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed." *Battista v. Lebanon Trotting Ass'n*, 538 F. 2d 111, 117 (6th Cir. 1976). *See also Solid Gold Jewelers v. ADT Sec'y Sys., Inc.*, 600 F. Supp. 2d 956, 962 (N.D. Ohio 2007)(a plaintiff "may not maintain a separate action in negligence based on allegations that [defendant] failed to perform its contractual obligation with the requisite skill, care, and faithfulness.").

Defendant contends that plaintiff's negligence claim is based on only those duties owed by defendant to plaintiff as expressly provided for in the parties' contractual relationship. *Defendant's Motion*, PAGEID# 445. This Court agrees. In addressing the duties owed by defendant to plaintiff, the *Amended Complaint* alleges, in relevant part, as follows:

> 163. Defendant Caring Transitions had a duty to properly label, inventory, store, market, and advertise Ms. Barrett-O'Neill's Household Goods and Antiques.

> 164. Defendant Caring Transitions breached its duty when it mislabeled, marketed, and sold Ms. Barrett-O'Neill's antiques for less than 50% of the value stated in the Property Liquidation Agreement.

> 165. Defendant Caring Transitions breached its duty when it mislabeled, marketed, and otherwise disposed of Ms. Barrett-O'Neill's Household Goods.

> 166. Defendant Caring Transitions breached its duty when it lost Ms. Barrett-O'Neill's antiques and Household Goods.

> 167. Defendant Caring Transitions breached its duty
> when it improperly liquidated Ms. Barrett-O'Neill's
> Antiques and Household Goods.

*Amended Complaint*, PAGEID# 285-86. These alleged duties relate only to

the parties' contractual relationship and have no connection with

either the CSPA or Ohio Admin. Code § 109:4-3-05(D)(14). In any event,

the Court has concluded, *see supra*, that there was no violation of

Ohio Admin. Code § 109:4-3-05(D)(14).

In short, the Court concludes that defendant is entitled to

summary judgment on the negligence claim asserted in Count Four of the

*Amended Complaint*.

**E. Conversion**

In Count Five of the *Amended Complaint*, plaintiff alleges that,

as of August 17, 2013, defendant no longer had the right to possess

any of plaintiff's household goods and that, by retaining or disposing

of certain items after that date, defendant converted plaintiff's

property. *Amended Complaint*, PAGEID# 286-87. Defendant moves for

summary judgment on this claim, arguing again that the claim is

foreclosed by the existence of the parties' contractual relationship.

*Defendant's Motion*, PAGEID# 446. Plaintiff also moves for summary

judgment on this claim, arguing that defendant wrongfully exerted

dominion over plaintiff's household goods in a manner inconsistent

with plaintiff's rights. *Plaintiff's Motion*, PAGEID# 784.

In order to establish a claim of conversion under Ohio law, "a

plaintiff must establish '(1) plaintiff's ownership or right to

possession of the property at the time of conversion; (2) defendant's

conversion by a wrongful act or disposition of plaintiff's property

rights, and (3) damages.'" *Academic Imaging, LLC v. Soterion Corp.*, 352 F. App'x 59, 67 (6th Cir. 2009) (citing *Dream Makers v. Marshek*, 2002 WL 31839190 (Ct. App. 8th Dec. 19, 2002). "As in all tort actions that are 'factually intertwined' with a contract, '[i]n conversion actions, Ohio Courts have held, [s]uch tort claim lies against a contracting party independent of a breach of contract claim so long as the plaintiff alleges a breach of a duty owed separately from obligations created by the contract.'" *Id.* (citing *Jean v. Stanley Works*, No. 1:04-cv-1904, 2006 WL 1966644, at *5 (N.D. Ohio July 5, 2006) (citation omitted)).

Plaintiff does not propose a tort claim for conversion independent of the obligations created by the parties' contractual relationship. *See Plaintiff's Response*, PAGEID# 1141 ("[T]he contract expressly provided for the return of any unsold goods. . . . When Defendant did not return the goods, it converted them."). Indeed, plaintiff's own request for summary judgment on this claim is based on the parties' contract: "Under the Agreement, Ms. Barrett-O'Neill had the right to not have her goods sold for less than 50% of their retail value and to reclaim any items before they were donated or liquidated." *Plaintiff's Motion*, PAGEID# 784. Under these circumstances, defendant is entitled to summary judgment on plaintiff's claim of conversion contained in Count Five of the *Amended Complaint*.

### F. Breach of Bailment

In Count Six of the *Amended Complaint*, plaintiff alleges that the *Agreement* created a bailment and that, by negligently failing to

37

return bailed goods to her when the bailment ended on August 17, 2013, defendant breached the bailment. *Amended Complaint*, PAGEID# 287. Defendant moves for summary judgment on this claim, arguing that plaintiff was entitled to the return of her household goods only upon payment of the full commission to which defendant was entitled. Because plaintiff has not done so, defendant argues, it is entitled to judgment on this claim. *Defendant's Motion*, PAGEID# 454. Plaintiff also moves for summary judgment on the bailment claim. *Plaintiff's Motion*, PAGEID# 785.

"Under Ohio law, 'a bailment is the delivery of goods or personal property by one person to another in trust for a particular purpose.'" *Verathon, Inc. v. DEX One Service, Inc.*, No. 2:13-cv-205, 2013 WL 1627073, at *8 (S.D. Ohio 2013) (quoting *Welch v. Smith*, 129 Ohio App.3d 224 (Ct. App. 1st 1998)). In order to establish a cause of action under a theory of bailment, "the bailor must prove: '(1) the contract of bailment, (2) delivery of the bailed property to the bailee[], and (3) failure of the bailee[] to deliver the bailed property undamaged at the termination of the bailment.'" *Vandeventer v. Vandeventer*, 132 Ohio App.3d 762, 768 (Ct. App. 12th 1999) (quoting *David v. Lose*, 7 Ohio St. 2d 97, 99 (1966) paragraph one of the syllabus).

The parties appear to agree that the *Agreement* created a bailment relationship between them. *See Defendant's Motion*, PAGEID# 454; *Plaintiff's Motion*, PAGEID# 769. Defendant contends that the *Agreement* conferred on it the right to possess plaintiff's household goods until a commission was paid on each item, either upon the sale of the item

or upon plaintiff's retrieval of items. *Defendant's Motion*, PAGEID#

454. The relevant section of the *Agreement* provides:

> 3. **Commission.** Client shall pay Caring Transitions a
> "Commission" of 35% of the total of the Gross Proceeds of
> the Sale. "Gross Proceeds" means the total gross purchase
> price (whether cash or credit) of all Household Goods sold
> after the date of this contract, <u>plus</u> the sale price, as
> determined by Caring Transitions, of all Household Goods
> claimed by, removed by, delivered to, or distributed to any
> person (including heirs or beneficiaries of the Estate)
> without payment of the full sale price (other than by
> theft), or otherwise removed from the Sale by the
> authorization of Client or the personal representative of
> the Estate, <u>less</u> sales taxes that are required to be and
> are collected from purchasers of the Household Goods and
> paid to a state or local tax authority.

*Agreement*, PAGEID# 734 (emphasis in the original). Although this

provision conferred on defendant a right to a commission, and defined

the scope of that commission, nothing in this section, or elsewhere in

the *Agreement*, explicitly gave defendant the right to retain

possession of plaintiff's goods until its commission was fully paid.

*See generally Agreement*. Under these circumstances, the Court

concludes that defendant is not entitled to summary judgment on this

basis.

Although the *Amended Complaint* alleges that the bailment ended on

August 17, 2013, *id.* at PAGEID# 287, *Plaintiff' Motion* takes the

position that defendant acted in breach of the bailment when, on July

20, 2013, defendant represented that plaintiff's household goods had

been "sold, donated or otherwise liquidated." *Plaintiff's Motion*,

PAGEID# 785 (quoting *July 20, 2013 Email*, PAGEID# 1330).

Genuine issues of material fact remain for resolution in

connection with this claim. As noted *supra*, it is not clear what items

were retrieved by plaintiff on August 17, 2013, nor is it clear

whether any items were disposed of by defendant after that date and, if so, whether the circumstances of any such disposal violated the terms of the *Agreement*. Under these circumstances, summary judgment in favor of either party is unwarranted.

### G. Trespass to Chattels

In Count Seven of the *Amended Complaint*, plaintiff claims that defendant committed a trespass to chattels when it refused to return plaintiff's household goods after plaintiff's demand on August 17, 2013.[6] *See Amended Complaint*, PAGEID# 287-88. Defendant again moves for summary judgment on the ground that recovery on this claim sounding in tort is barred by the existence of the parties' contractual relationship. *Defendant's Motion*, PAGEID# 447. Plaintiff moves for summary judgment on this claim, arguing that defendant deprived plaintiff of the use of her household goods "since July 17, 2013."[7] *Plaintiff's Motion*, PAGEID# 784-85.

"While authority under Ohio law respecting an action for trespass to chattels is extremely meager, it appears to be an actionable tort." *CompuServe Inc. v. Cyber Promotions, Inc*., 962 F. Supp. 1015, 1021 (S.D. Ohio 1997). "A trespass to chattel occurs when one intentionally dispossesses another of their personal property." *Mercer v. Halmbacher*, 44 N.E. 3d 1011, 1017 (Ct. App. 9th 2015) (citation omitted).

> One who commits a trespass to a chattel is subject to liability to the possessor of the chattel if, but only if,
> (a) he dispossesses the other of the chattel, or (b) the

---

[6] The *Amended Complaint* actually refers to the date "August 17, 2012," *id*. at PAGEID# 287, which is, presumably, a typographical error.

[7] Again, the Court assumes that, by her reference to "July 17, 2013," plaintiff intended to refer to August 17, 2013.

> chattel is impaired as to its condition, quality, or value,
> or (c) the possessor is deprived of the use of the chattel
> for a substantial time, or (d) bodily harm is caused to the
> possessor, or harm is caused to some person or thing in
> which the possessor has a legally protected interest.

*CompuServe*, 962 F. Supp. at 1021-22 (citing Restatement (Second) of

Torts § 218 (1965)).

Trespass to chattels has been described as the "little brother to

conversion." *State v. Herbert*, 49 Ohio St. 2d 88, 119 (1976). Like

plaintiff's claim of conversion, her tort claim of trespass to

chattels is inextricably intertwined with the obligations created by a

valid contract. *See Academic Imaging*, 352 F. App'x at 67. As it did in

connection with plaintiff's claim of conversion, *see supra*, the Court

finds no genuine issue of material fact with respect to plaintiff's

claim of trespass to chattels and therefore concludes that defendant

is entitled to summary judgment on this claim.

## IV. Conclusion

**WHEREUPON**, *Defendant's Motion,* ECF No. 52, is **GRANTED** in part and

**DENIED** in part, and *Plaintiff's Motion,* ECF No. 53, is **GRANTED** in part

and **DENIED** in part. Specifically, *Defendant's Motion* is **GRANTED**

- on plaintiff's claims under the CSPA, as follows:

> plaintiff's claims that defendant acted unconscionably
> in violation of O.R.C. § 1345.03(B)(1) by taking
> advantage of plaintiff's age and emotional state,
>
> that defendant committed a deceptive act in violation
> of Ohio Admin. Code § 109:4-3-05(D)(6) when it
> charged plaintiff for a third move,
>
> that defendant committed a deceptive act in violation
> of Ohio Admin. Code § 109:4-3-05(D)(14) when it failed
> to provide an itemized receipt for goods left with it
> for service, and
>
> that defendant committed a deceptive act in violation

of O.R.C. § 1345.02(B)(9) by representing that it had a sponsorship, approval, or affiliation that it did not have;

- on plaintiff's breach of contract claims;

- on plaintiff's fraudulent misrepresentation claim in connection with the alleged representation that plaintiff's residence would be left "broom clean;"

- on plaintiff's negligence claim;

- on plaintiff's conversion claim; and

- on plaintiff's trespass to chattels claim.

*Plaintiff's Motion* is **GRANTED**

- on plaintiff's claims under the CSPA, as follows:

that defendant committed a deceptive act in violation of Ohio Admin. Code § 109:4-3-05(D)(6) when it charged plaintiff for "Sale Prep,"

that defendant committed a deceptive act in violation of Ohio Admin. Code § 109:4-3-05(D)(9) when it asserted on July 20, 2013, that all but four of plaintiff's items had been disposed of, and

that defendant committed a deceptive act in violation of Ohio Admin. Code § 109:4-3-05(D)(12) when it failed to provide plaintiff an itemized list of services that included the identity of the individual(s) who performed the moving and cleaning services.

*Defendant's Motion* and *Plaintiff's Motion* are **DENIED**

- on plaintiff's claim under the CSPA that defendant acted unconscionably in violation of O.R.C. §§ 1345.03(B)(3), (5);

- on plaintiff's fraudulent misrepresentation claim in connection with defendant's alleged misrepresentation of its expertise in antiques; and

- on plaintiff's breach of bailment claim.

          *s/ Norah McCann King___*
          Norah McCann King
          United States Magistrate Judge

March 21, 2016